UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____
                                                                           X

THE NEW YORK TIMES COMPANY,        :

                    Plaintiff,        :

                v.        :

                              **COMPLAINT**

U.S. DEPARTMENT OF JUSTICE,        :

                   Defendant.        :
_____X

Plaintiff THE NEW YORK TIMES COMPANY, by and through its undersigned attorneys, alleges as follows:

1.     This is an action under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA"), to obtain an order for the production of agency records from the U.S. Department of Justice ("DOJ") in response to a request properly made by Plaintiff.

## PARTIES

2.     Plaintiff The New York Times Company ("The Times") publishes *The New York Times* newspaper and www.nytimes.com. The Times is headquartered in this judicial district at 620 Eighth Avenue, New York, New York, 10018.

3.     Defendant DOJ is an agency of the federal government that has possession and control of the records that Plaintiff seeks.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

5. Venue is premised on Plaintiff's place of business and is proper in this district under 5 U.S.C. § 552(a)(4)(B).

6. FOIA requires that agencies respond to the Request within 20 business days. *See* 5 U.S.C. § 552(a)(6)(A).

7. Defendant DOJ has failed to meet the statutory deadlines set by FOIA. *See* 5 U.S.C. § 552(a)(6)(A)-(B). Plaintiff is therefore deemed to have exhausted all administrative remedies, pursuant to 5 U.S.C. § 552(a)(6)(C).

## FACTS

8. In early 2017, several congressional committees—including the House Permanent Select Committee on Intelligence (HPSCI), the Senate Select Committee on Intelligence (SSCI), and the Senate Judiciary Committee (SJC)—announced that they were either currently conducting or would initiate inquiries into Russian interference in the 2016 presidential election. Robert S. Mueller, III, Special Counsel, *Report on the Investigation Into Russian Interference in the 2016 Presidential Election* 8, U.S. Dep't of Justice (March 2019), https://www.justice.gov/archives/sco/file/1373816/download.

9. On March 20, 2017, FBI Director James Comey testified before the House Intelligence Committee. He confirmed that the FBI was "investigating the Russian government's efforts to interfere in the 2016 presidential election, and that includes investigating the nature of any links between individuals associated with the Trump campaign and the Russian government and whether there was any coordination between the campaign and Russia's effort." *Id.*

10. The investigation continued under Comey's direction until May 9, 2017, when he was fired by President Trump. On May 17, 2017, Acting Attorney General Rod Rosenstein appointed Robert Mueller as Special Counsel and authorized him to continue the investigation.

11. President Trump "reacted negatively" to the appointment of Mueller as Special Counsel, telling advisors that "it was the end of his presidency" and engaging in "efforts to curtail the Special Counsel's investigation." *Id.* at 8.

12. On March 22, 2019, Mueller submitted a two-volume report detailing his investigation into Russian infiltration of the Trump campaign (the "Mueller Report") to Attorney General William Barr.

13. Two days later, on March 24, 2019, Barr submitted a letter to Congress, which set forth his public summary of the Mueller Report and announced that the investigation had found no conspiracy. That summary was, a federal judge later found, "distorted" and "misleading." *Elec. Privacy Info. Ctr. v. United States DOJ*, 442 F. Supp. 3d 37, 49, 51 (D.D.C. 2020).

14. As a result, when the Mueller Report itself was released a month later, it came as a bombshell. *See* Mueller, *supra*. Among its findings were:

   a. "[O]n multiple occasions, members and surrogates of the Trump Campaign promoted—typically by linking, retweeting, or similar methods of reposting—pro-Trump or anti-Clinton content published by the [Russian Internet Research Agency, "IRA"] through IRA-controlled social media accounts. . . . In total, Trump Campaign affiliates promoted dozens of tweets, posts, and other political content created by the IRA." *Id.* at 33.

   b. "Starting in June 2016, the IRA contacted different U.S. persons affiliated with the Trump Campaign in an effort to coordinate pro-Trump IRA-organized rallies inside the United States." *Id.* at 35.

   c. "[T]he investigation established that several individuals affiliated with the Trump Campaign lied to the Office, and to Congress, about their interactions with Russian-

affiliated individuals and related matters. Those lies materially impaired the investigation of Russian election interference." *Id.* at 9.

15. The Mueller Report disclosed that "the investigation established that the Russian government perceived it would benefit from a Trump presidency and worked to secure that outcome and that the Campaign expected it would benefit electorally from information stolen and released through Russian efforts." *Id.* at 1–2.

16. Although Mueller concluded that there was insufficient evidence to charge anyone involved with the Trump campaign with conspiracy, he stressed that the report was not an "all clear."

17. The Mueller Report explicitly and emphatically stated that it did not exonerate the President's allies of conspiracy, asserting that "[a] statement that the investigation did not establish particular facts does not mean there was no evidence of those facts." *Id.* at 2.

18. Over almost 200 pages, the Mueller Report catalogued "the numerous links between the Russian government and the Trump Campaign," and it expressly declined to decide whether those contacts could be regarded as "collusion." *Id.* at 1–2.

19. The Mueller Report did not rule out the existence of a conspiracy to interfere in the 2016 election.

20. On January 30, 2021, The Times submitted a FOIA Request (the "Request") to DOJ Office of Special Counsel. As context for the records sought by The Times, the Request explained:

> i. Andrew Weissman served as a lead prosecutor within Robert S. Mueller's Special Counsel's Office and its investigation into Russian interference in the 2016 presidential election of Donald J. Trump. Mr. Weissman has subsequently authored a book titled *Where the Law Ends: Inside The Mueller Investigation* discussing Special Counsel Mueller's investigation. In his book, Mr. Weissman references "an internal report memorializing everything

4

> [Weismann's investigation team or 'Team M'] found, [its] conclusions, and the limitations on the investigation, and provided it to other team leaders as well as had it maintained in [Team M's] files." Andrew Weissman, *Where the Law Ends: Inside the Mueller Investigation* 264 (1st Ed. 2020).

The Times' Request sought a copy of the internal report done by Mr. Weissman's team (the "Alternative Mueller Report") referenced in Weissman's book.

21. The Alternative Mueller Report is a document of immense public interest. It may provide a more complete explanation of the scope of the Special Counsel's investigation and could shed light on the success of President Trump's efforts to curtail the examination.

22. Ultimately, Weissman's acknowledgement of the existence of the Alternative Mueller Report suggests that there was important facts or findings omitted from the original version.

23. On February 12, 2021, DOJ responded by acknowledging receipt of the Request and by providing the tracking number FOIA-2021-00715. DOJ also denied expedited processing of the Request and assigned it to its complex track. DOJ stated that the Request fells within the "unusual circumstances" proscribed by FOIA, which allows for an extension of no more than ten working days. 5 U.S.C. 552 § (a)(6)(B)(i).

24. DOJ has not communicated in any way with The Times since sending its acknowledgment letter on February 12, 2021.

## FIRST CAUSE OF ACTION

25. Plaintiff repeats, realleges, and reincorporates the allegations in the foregoing paragraphs as though fully set forth herein.

26. Defendant is an agency subject to FOIA and must therefore release in response to a FOIA request any disclosable records in its possession at the time of the request and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

27. Defendant has failed to meet the statutory deadlines of twenty business days set by FOIA, 5 U.S.C. § 552(a)(6)(A)(i). Accordingly, Plaintiff is deemed to have exhausted its administrative remedies under FOIA.

28. Defendant is permitted to withhold documents or parts of documents only if one of FOIA's enumerated exemptions apply.

29. No exemptions permit the withholding of the documents sought by the Request, in part or in full.

30. Accordingly, Plaintiff is entitled to an order compelling Defendant to produce records responsive to the Request.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

31. Declare that the documents sought by the Request, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and must be disclosed;

32. Order DOJ to undertake an adequate search for the requested records and provide those records to Plaintiff within 20 business days of the Court's order;

33. Award Plaintiff the costs of this proceeding, including reasonable attorneys' fees, as expressly permitted by FOIA; and

34. Grant Plaintiff such other and further relief as this Court deems just and proper.

Dated: New York, New York
July 15, 2021

/s/ David E. McCraw
David E. McCraw
Alexandra Settelmayer
Legal Department
The New York Times Company
620 8th Avenue
New York, NY 10018
Phone: (212) 556-4031
Fax: (212) 556-4634
E-mail: mccraw@nytimes.com

*Counsel for Plaintiff*